UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**MICHAEL B.,**

**Plaintiff,**

    **v.**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:21-cv-00609-TPK

**OPINION AND ORDER**

## OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by an Administrative Law Judge on January 15, 2021, following a remand from this Court, denied Plaintiff's application for disability insurance benefits. Plaintiff has now moved for judgment on the pleadings (Doc. 7), and the Commissioner has filed a similar motion (Doc. 9). For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the Defendant.

### I.  BACKGROUND

    Plaintiff filed his application for benefits on February 25, 2015, alleging that he became disabled on February 1, 2014. After initial administrative denials of that claim, a hearing was held before an Administrative Law Judge on March 13, 2017. That ALJ denied the claim, and, following the denial of review by the Appeals Council, the matter was appealed to this Court. In a decision issued on March 4, 2020, the Court concluded that the ALJ had not sufficiently articulated good reasons for discounting the opinions of two medical sources, Drs. Maclean and Peer, and therefore remanded the case for further proceedings. *See* Case No. 1:18-cv-00745 (March 4, 2020). After the Appeals Council remanded the case, a hearing was held by a different ALJ on December 9, 2020. Both Plaintiff and a vocational expert, Rocco J. Meola, testified at the hearing.

    The Administrative Law Judge issued an unfavorable decision on January 15, 2021. He first found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2021 and that he had not engaged in substantial gainful activity since his alleged onset date. Next, he concluded that Plaintiff suffered from severe impairments including degenerative disc disease of the cervical spine with radiculopathy, cervicogenic headaches, and exertional dyspnea, also referred to as COPD. However, the ALJ determined that these impairments, taken singly or in combination, did not meet the criteria for disability under the

Listing of Impairments.

Moving forward with the sequential evaluation process, the ALJ then concluded that Plaintiff had the ability to perform a limited range of light work. He could occasionally push, pull, and reach overhead with the upper extremities and had to avoid unprotected heights, hazards, climbing ropes, ladders, and scaffolds, and concentrated exposure to respiratory irritants and extreme cold temperatures. After making this determination, the ALJ concluded that Plaintiff could perform his past relevant work as a fire equipment inspector, which is a light and semi-skilled occupation. As a result, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.

Plaintiff, in his motion for judgment on the pleadings, raises three issues: (1) the ALJ did not properly evaluate the treating source opinions; (2) the ALJ did not reconcile his residual functional capacity finding with the opinion of Dr. Siddiqui, a consultative examiner; and (3) the vocational expert's testimony was not consistent with the Dictionary of Occupational Titles and the ALJ failed to resolve the conflict. *See* Plaintiff's Memorandum, Doc. 7-1, at 1.

## II. THE KEY EVIDENCE

### A. Hearing Testimony

Plaintiff, who was 61 years old at the time of the first administrative hearing, first testified that he was a high school graduate with some college credits as well. He also had several vocational certifications. He said that most recently he had worked a security guard at a college, a job he left for what he described as physical reasons. After that, he worked part-time as a cashier at a vacuum cleaner shop, a job he was still performing at the time of the hearing. Earlier, he had worked at a fire department, but retired early due to his physical limitations and being unable to pass a physical exam.

Additionally, Plaintiff said that he had a seizure disorder, and had a seizure about two years prior to hearing. He testified that his limitations included headaches and difficulty concentrating as a side effect of his medication. He was able to drive to work and occasionally to take trips out of state. However, he suffered from headaches on a daily basis and also used an inhaler several times per week due to having COPD. Plaintiff said that he needed to stand after sitting for about 45 minutes and that he could neither reach overhead or walk very far. He did very little in the way of household chores but was able to socialize with friends and family. Lastly, he said that he suffered from double vision.

At the second administrative hearing, Plaintiff clarified that the college security guard job was part-time as well. He also did some part-time work in 2019 and 2020. Plaintiff said that as a cumulative effect of injuries and surgeries, he was no longer able to work full-time. He described problems like double vision, neck, back, and shoulder pain, breathing difficulties, and limited range of motion. His neck pain radiated down his right arm and he still suffered from debilitating headaches. Plaintiff thought he could lift up to 25 pounds but not too frequently. He

had discomfort when standing as well.

Finally, Plaintiff was asked questions about his past work. He said that from 2006 to 2012, the last six years he worked, he was a firefighter, a job that required lifting well over 100 pounds. At the vacuum cleaner store, he had the option of sitting or standing and did essentially no lifting. His college employment was actually as a fire inspector, and that job also did not involve any lifting.

The vocational expert, Mr. Meola, first testified that the firefighter job was done at the very heavy exertional level, while the vacuum cleaner store position was light, as was the fire inspector job. He was then asked questions about a hypothetical person who could work at the light exertional level but with non-exertional limitations involving the use of the arms, avoidance of environmental irritants and temperature extremes, and avoidance of climbing ropes, ladders, and scaffolds and working around hazards and unprotected heights. Mr. Meola said such a person could do either of Plaintiff's past light jobs. However, if doing fire safety inspections involved climbing ladders, the person could not do that job. Mr. Meola further testified that based on his knowledge of how the fire inspector job is actually performed, climbing ladders is not required, although the DOT does indicate that some type of climbing is required.

### B. Treatment Records

The pertinent medical treatment records show the following. In 2012, Plaintiff was treated for neck pain arising from a work injury that occurred in 2011. He was experiencing pain in both sides of the neck and in his shoulders and also had headaches. Lifting and overhead work aggravated the pain. Facet nerve blocks had helped him substantially. The diagnoses at that time were cervical spondylosis and cervical disc displacement. He saw a neurologist for headaches in 2013 and was also noted to have been seizure-free on medication. Treatment notes from 2014 indicate that he was being seen for exertional dyspnea which was at least partially caused by lung disease. Cardiac testing was done and showed some coronary artery disease as well. He had facet blocks done again in 2015 and 2016. Treatment records for subsequent years are similar in terms of Plaintiff's reports of neck pain and headaches.

### C. Opinion Evidence

Plaintiff was consultatively examined by Dr. Siddiqui on April 13, 2015. Plaintiff reported a history of a seizure disorder dating back to 1979 and neck and back pain beginning in 2003. He also had COPD, blurry vision, and arthritis in the shoulders, left knee, and both hands. On examination, he walked with a normal gait but had restricted range of motion in the cervical and lumbar spine. His hand and finger dexterity were intact. Dr. Siddiqui thought that Plaintiff had moderate limitations in his ability to sit, stand, climb, push, pull, or carry heavy objects, and that he should avoid dust, smoke, and other respiratory irritants. (Tr. 561-65). A psychiatric evaluation done the same day indicated only a mild limitation in dealing appropriately with stress due to an unspecified depressive disorder with anxious distress. (Tr. 571-75).

Dr. Peer, a treating source, completed a headaches residual functional capacity questionnaire on February 2, 2017. He stated that Plaintiff suffered various symptoms from his headaches including vertigo and that the headaches increased with strenuous activity. Bright lights, noise, stress and weather changes could also be triggers. He noted that injections had reduced Plaintiff's pain by half but also concluded that his seizure medication could cause fatigue, lack of concentration, and depressed affect. When Plaintiff had a headache, he would not be capable of working, and he would also need daily unscheduled work breaks, but he would only miss one day of work per month due to his impairments. Dr. Peer did not think that Plaintiff could carry heavy equipment, that he had lower vigilance due to his medication, and that he had difficulty reaching overhead. (Tr. 704-08). Dr. Peer completed a separate form evaluating Plaintiff's physical functional capacity and concluded that Plaintiff had restrictions in the ability to turn his neck, was limited to occasional twisting, stooping, crouching, and climbing stairs, had restrictions in the use of his hands and arms, could sit for only 45 minutes at a time and stand for 15, and needed daily unscheduled ten-minute work breaks. (Tr. 710-14). Dr. Maclean, another treating source, completed similar questionnaires and provided similar information, but he also thought that he thought Plaintiff would be off work for more than four days per month. (Tr. 716-26).

Finally, a state agency reviewer, Dr. Leong, reviewed the records up through June, 2015 and concluded that Plaintiff could do light work activity with some postural and environmental restrictions. She also thought he needed to avoid working around hazards such as machinery or heights. (Tr. 576).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a

reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV.  DISCUSSION

### A.  Evaluation of Treating Source Opinions

As noted above, this case was previously remanded because the Court found that the ALJ had not properly applied the treating physician rule which applies to this case because Plaintiff's application was filed prior to the 2017 amendment to that rule.  In particular, the Court determined that the ALJ failed to articulate good reasons for rejecting the opinions of Drs. Peer and Maclean, both of whom concluded that Plaintiff had sufficiently severe limitations which would preclude him from working.  In his first claim of error, Plaintiff argues that the more recent ALJ decision did not cure these defects.  More particularly, he asserts that the ALJ erred by rejecting both opinions based on perceived inconsistencies between the doctors' treatment notes and their conclusions, but, at the same time, failing to seek clarification in an effort to resolve those inconsistencies.  Further, he contends that the ALJ did not sufficiently identify the inconsistencies upon which he relied and argues that the fact that Plaintiff responded well to treatment does not support a finding that he was capable of working.  He also argues that the ALJ applied a double standard when evaluating Dr. Maclean's and Dr. Siddiqui's opinions and that he did not articulate good reasons for rejecting the mental limitations contained in the treating physicians' opinions.   The Commissioner responds that the ALJ did properly identify the inconsistencies at issue and had good reasons for giving these opinions little weight.

When this case was decided, the "treating physician" regulation found at 20 C.F.R. § 404.1527 was still in effect (it has since been repealed). As 20 C.F.R. § 404.1527 has been interpreted,

> "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.' " [*Burgess v. Astrue,* 537 F.3d 117, 127 (2d Cir. 2008)] at 128 (quoting 20 C.F.R. § 404.1527(c)(2)). There are, of course, circumstances when it is appropriate for an ALJ not to give controlling weight to a treating physician's opinion. *See, e.g., Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (holding that "the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts").

Nevertheless, even when a treating physician's opinion is not given controlling weight, SSA regulations require the ALJ to consider several factors in determining how much weight the opinion should receive. See 20 C.F.R. § 404.1527(c)(2)(I), (2)(ii), (3)–(6). "[T]o override the opinion of the treating physician, we have held that the ALJ must explicitly consider, inter alia: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam). "After considering the above factors, the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.' " *Burgess*, 537 F.3d at 129 (alteration in original) (quoting *Halloran*, 362 F.3d at 33). The failure to provide " 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id*. at 129–30 [citation omitted]. The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion. *Id*. at 131. Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015); *see also Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion").

In this case, the ALJ provided the following rationale for giving little weight to the two treating source opinions.  First, as to Dr. Peer, the ALJ said

> The February 2017 opinions of treating physician, Dr. Peer, exhibited at 21F and 22F, are given  little weight. While the length of Dr. Peer's treatment relationship would generally lend weight to the opinion, the weight of the opinion is reduced due to the serious inconsistency with Dr. Peer's own findings leading up to issuance of the opinion. Dr. Peer continuously reported reduced cervical range of motion, but good strength and no other abnormal findings, as the claimant had a good response to treatment. This is explained in detail above, outlining the entire treatment period as the claimant continuously reported relief of symptoms with adherence to treatment and facet injections (See 11F generally). In addition, the claimant would cease treatment with Dr. Peer, as of April 25, 2017 (35F/2), and subsequent treatment records with other medical providers are minimal. Dr. Peer's opinion is given reduced weight for the severe inconsistency with the longitudinal evidence of record.

Then, as to Dr. Maclean, the ALJ determined that

> the opinions of Dr. Maclean, exhibited at 23F and 24F, are given little weight. These opinion (sic) are inconsistent with Dr. MacLean's own examination

>findings and the longitudinal evidence of record. While the length of Dr. MacLean's treatment relationship would generally lend weight to the opinion, the weight of the opinion is reduced due to the serious inconsistency with Dr. Peer's own findings leading up to issuance of the opinion, and the subsequent examination findings where Dr. MacLean failed to perform musculoskeletal examination. In addition, Dr. MacLean's specialty is not orthopedics, as he is the claimant's primary care physician. Dr. MacLean was also issued supporting information from Dr. Battaglia, who performed neurological examinations of the claimant, and who has treated the claimant since 2013. On February 6, 2017, Dr. Battaglia, the claimant's neurologist, submitted a statement to Dr. MacLean where Dr. Battaglia confirmed that while the claimant has reduced range of motion in the cervical spine there was also "good strength" and "no limb dysmetria" (29F/3; 33F/15). Dr. Battaglia also confirmed that the claimant experienced no side effects from the Keppra medication (*Id.*). Dr. Battaglia stated, "[The claimant] is stable from a seizure as well as chronic head and neck pain standpoint" (*Id.*). Dr. Battaglia noted that the claimant was considering radiofrequency ablation, and stated, "He has been assessed by Dr. Egnatchik who is willing to perform surgery whenever [the claimant] is ready" (*Id.*). The claimant would not undergo surgery and he currently treats his impairments with Aleve. Dr. Maclean's opinion carries little weight due to the severity of the opinion with little supporting evidence and virtually no musculoskeletal examination to support such an extreme limitation level.

(Tr. 816-17).

Addressing Plaintiff's concerns with this rationale, the Court, first, does not agree that the ALJ's decision lacks the required level of specificity needed to comply with the treating physician rule. As to Dr. Peer's opinion, the ALJ identified the inconsistencies upon which he relied, including the fact that the most significant finding in the various examinations was reduced cervical range of motion, that no other abnormalities were noted, and that Plaintiff had shown good response to treatment. The ALJ also pointed out that after Plaintiff stopped seeing Dr. Peer, treatment notes from subsequent doctors showed only minimal findings. The ALJ also made reference to his earlier detailed summary of the treatment notes, which included only recommendations for conservative treatment. The amount of detail included in the ALJ's decision is sufficient to overcome the claim that he did not articulate his reasons for ascribing little weight to Dr. Peer's opinions. The same is true for his analysis of Dr. Maclean's opinions, with the ALJ indicating that they, too, were not supported by his own examination findings, by his failure to conduct a musculoskeletal examination, and by the information he received from Dr. Battaglia, Plaintiff's neurologist.

The next question is whether the ALJ was obligated, under these circumstances, to contact either Dr. Peer or Dr. Maclean for further clarification of the bases for their opinions. Although Plaintiff appears to argue that whenever a treating physician's opinion is discounted based on inconsistencies between that opinion and the underlying physical findings, the ALJ has

a duty to contact the physician to seek clarification, the applicable legal standard is not quite so rigid. As this Court has said,

> "The expert opinions of a treating physician are of particular importance to a disability determination." *Delgado v. Berryhill*, No. 3:17-CV-54 (JCH), 2018 WL 1316198, at *7 (D. Conn. Mar. 14, 2018). While the Commissioner's regulations do not require an ALJ to recontact a treating physician in all cases of ambiguity, they "contemplate the ALJ re-contacting treating physicians when the additional information needed is directly related to that source's medical opinion" and "in cases (like the one at bar) where re-contacting the treating source is the best, if not the only way to resolve the [ambiguity], it is incumbent upon the ALJ to do so." *Ballard v. Comm'r of Soc. Sec.*, No. 19 CIV. 673 (PED), 2020 WL 1031908, at *17 (S.D.N.Y. Mar. 2, 2020) (quotations and alteration omitted).

*Gulczewski v. Comm'r of Soc. Sec.*, 464 F. Supp. 3d 490, 498 (W.D.N.Y. 2020). In other words, an ALJ may not simply reject an opinion because it is ambiguous without asking for more information (or using other portions of the record to resolve the ambiguities), but it is well within the province of the ALJ to discount an opinion because it is not supported by or conflicts with other evidence in the record. As the Court of Appeals has consistently stated, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion ... that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also Marlene S. v. Comm'r of Soc. Sec.*, 2023 WL 2717435, at *4 (W.D.N.Y. Mar. 30, 2023) ("It was the ALJ's job, however, to assess whether [a medical] opinion was supported by ... clinical findings and consistent with the other evidence in the record. *See* 20 C.F.R. § 416.927(f); *cf. Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) (holding that an ALJ may discount a treating physician's opinion if it is inconsistent with the physician's own treating notes, the other medical opinion evidence, and the claimant's self-reported activities of daily living)." Given these controlling legal principles, the Court finds no error in the ALJ's determination to discount the opinions of Drs. Peer and Maclean on the basis of the lack of support for those opinions in the record and the inconsistencies which existed with their own findings and the other record evidence.

Lastly, Plaintiff argues that the ALJ did not apply the same standard of review to the opinions of Drs. Maclean and Siddiqui and did not address the mental limitations expressed in both treating doctors' opinions. The Court finds no merit in either of these contentions. The ALJ articulated numerous other reasons for giving less weight to Dr. Maclean's opinions, and he did address mental limitations by discussing the medication side effects (which appear to be the basis for the mental limitations referred to by both doctors) in some detail, *see* Tr. 817. Overall, the Court finds that Plaintiff's first claim of error provides no basis for ordering a remand.

### B. Dr. Siddiqui's Opinion

Plaintiff's next claim of error is that the ALJ erred by giving significant weight to Dr.

Siddiqui's opinion but, at the same time, crafting a residual functional capacity finding which, in Plaintiff's view, did not reflect the fact that Dr. Siddiqui thought that Plaintiff was moderately limited in his ability to sit and stand.  Plaintiff argues that a moderate limitation in standing is not consistent with six hours of standing per day, which is a requirement of light work, and that the ALJ compounded his error by failing to provide an explanation for why he believed Plaintiff had a greater ability to stand than Dr. Siddiqui did.  The Commissioner responds that a moderate limitation in the ability to stand is, in fact, consistent with the ability to do light work, and that the ALJ was also justified in adopting the limitations expressed by the state agency reviewer, who concluded that Plaintiff could stand for six hours in a workday.

The ALJ did give significant weight to Dr. Siddiqui's opinion, determining that it was "consistent with the claimant's examination findings, the objective evidence of record, and the longitudinal evidence as a whole." (Tr. 816).  He made the same finding about Dr. Leong's conclusions, however.  *Id*.  To the extent that these two opinions were in conflict about Plaintiff's standing and sitting capabilities - and it is by no means clear that they were, *see, e.g., White v. Berryhill*, 753 Fed.Appx. 80 (2d Cir. Feb. 7, 2019) - the ALJ was entitled to rely on Dr. Leong's interpretation of the records, including Dr. Siddiqui's examination findings and conclusions, as meaning that Plaintiff could meet the standing requirements for light work. Thus, this claim of error also provides no basis for a remand.

### C.  Conflict with the DOT

Plaintiff last assertion of error is that there was an unresolved conflict between the vocational testimony and the DOT.  In particular, he points out that the ALJ's residual functional capacity finding limited him to occasional reaching overhead, but the job of fire inspector as described in the DOT requires frequent reaching.  Because this apparent conflict was not addressed or resolved at the administrative hearing, Plaintiff argues that the ALJ's subsequent attempt to rationalize the conflict in his decision was simply speculation.  In response, the Commissioner argues that the DOT description of the fire inspector job was irrelevant because Plaintiff actually performed the job without the need for frequent reaching.

The Commissioner has the better of this argument.  This Court has said that "the conflict between the DOT and the VE's testimony regarding Plaintiff's [past relevant work] as generally performed is immaterial to whether Plaintiff could perform her PRW as actually performed." *Filer v. Comm'r of Soc. Sec.,* 435 F. Supp. 3d 517, 523 (W.D.N.Y. 2020).  In his written description of his work for the college, Plaintiff did not indicate that any reaching was required. (Tr. 247).  He also did not include reaching in his oral testimony concerning the physical requirements of the job.  (Tr. 852-53).  As the *Filer* decision also indicates, it is the claimant's burden to show that the requirements of a past relevant job exceed the limitations found by the ALJ as part of the residual functional capacity determination.  *See Filer, supra,* at 523, *citing Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013).  Since nothing in this record shows that a person with the limitations described by the ALJ could not do the fire inspector job as Plaintiff actually performed it, there is no merit to this third claim, and no basis upon which to direct a remand.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 7), **GRANTS** the Commissioner's motion (Doc. 9), and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

>                          **/s/ Terence P.  Kemp**
>                          **United States Magistrate Judge**